882 P.2d 57

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Donald B. BAILEY, Defendant– Appellant.**

**Nos. 14769, 14809.**

Court of Appeals of New Mexico.

Aug. 5, 1994.

Certiorari Denied Sept. 9, 1994.

Tom Udall, Atty. Gen., Daniel F. Haft, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Peter B. Rames, Albuquerque, for defendant-appellant.

## OPINION

BOSSON, Judge.

This case presents two interesting questions. The first is whether a court exercising criminal jurisdiction and acting sua sponte may include in its sentencing order an injunction against further criminal conduct. The second is whether the injunction, even if invalid, insulates Defendant from a contempt citation for its wilful violation. We hold that the district court's injunction exceeded its authority, but we nonetheless affirm the citation for contempt.

## BACKGROUND

Defendant was convicted in magistrate court of speeding, driving without proof of financial responsibility, driving without a current vehicle registration, and driving without a driver's license. NMSA 1978, §§ 66–3–19, 66–5–205, 66–7–301 (Cum.Supp.1993); and § 66–5–2 (Repl.Pamp.1989). He appealed to district court where he received a trial de novo. Defendant did not deny the charges. Instead, he argued that he had an inherent, inalienable right to drive without complying with license and registration requirements of the State. Defendant had been previously stopped, warned, and cited regarding similar infractions.

The district court found Defendant guilty of all charges. In addition to fines, the court issued an injunction prohibiting Defendant from operating his vehicle until he satisfied the licensing and registration requirements of the Motor Vehicle Code. Defendant refused to comply, and soon thereafter he was brought before the court for violation of the injunction. The judge found Defendant in contempt of court and sentenced him to six months in jail, suspending all but three days. Defendant appeals both the finding of contempt and the underlying injunction.

## INJUNCTION

It is fundamental in New Mexico that when a district court exercises its criminal jurisdiction, it has only those powers to punish that are specifically prescribed by the legislature. See State v. Sparks, 102 N.M. 317, 324, 694 P.2d 1382, 1389 (Ct.App.1985). A court may not improvise or elaborate on that specific grant of power. In this case, the Motor Vehicle Code includes fines, incarceration, or both, within the potential sphere of punishment. See NMSA 1978, § 66–8–7 (Cum.Supp.1993). The legislature does not authorize courts to issue injunctions as an additional means of enforcing the Code. Therefore, the district court's injunction exceeded the authority prescribed by law. See State v. Charlton, 115 N.M. 35, 37–38, 846 P.2d 341, 343–44 (Ct.App.1992), cert. denied, 114 N.M. 577, 844 P.2d 827 (1993); State v. Crespin, 96 N.M. 640, 643, 633 P.2d 1238, 1241 (Ct.App.1981).

The State suggests that authority lies in the constitutional grant of power to district courts to issue writs of injunction in

exercise of their jurisdiction. *See* N.M. Const. art. VI, § 13. However, injunctive powers, as with other writs, must be properly invoked by legal process, which puts the party on notice and affords an opportunity to defend. *See* SCRA 1986, 1–065, 1–066 (Repl. 1992); *In re Doe,* 99 N.M. 517, 520–21, 660 P.2d 607, 610–11 (Ct.App.1983). For example, repeated illegal conduct and the threat to continue it, might justify a civil complaint for injunction, *see Los Lunas Consol. Sch. Dist. No. 1 v. Zbur,* 89 N.M. 454, 457, 553 P.2d 1261, 1264 (1976), or a suit to abate a public nuisance if there is a threat to the general public. *See State v. Davis,* 65 N.M. 128, 131–32, 333 P.2d 613, 615–16 (1958). However, there is nothing in the rules of procedure, civil or criminal, which authorizes a district court to issue an injunction on its own, without process and without prior notice. Nor can we read such a power into the state constitution.

## CONTEMPT

■ Having determined the district court lacked authority to issue its injunction, we must now decide whether that order was enforceable, nonetheless, by the court's contempt power. There is no question that New Mexico district courts have the power to hold a litigant in contempt for disobeying a direct order. *See State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957); SCRA 1986, 5–902 (Repl.1992). This Court has only recently underscored the district court's use of its contempt power, where a person defies judicial authority instead of seeking redress through the appeal process or extraordinary writ. *See Purpura v. Purpura,* 115 N.M. 80, 83, 847 P.2d 314, 317 (Ct.App.), *cert. denied,* 115 N.M. 79, 847 P.2d 313 (1993); *State v. Cherryhomes,* 114 N.M. 495, 498, 840 P.2d 1261, 1264 (Ct.App.), *cert. denied,* 114 N.M. 501, 841 P.2d 549 (1992). This is the "collateral bar rule" under which litigants ignore a court order at their peril and may not attack the order collaterally when held in contempt.

■ Defendant argues for an exception to the collateral bar rule. He claims the court's injunction, issued in the context of a criminal case, was not just erroneous, but an act in excess of its jurisdiction, and therefore void.

In this case the district court had both personal and subject matter jurisdiction. Defendant had been cited for violations of the Motor Vehicle Code, *see* SCRA 1986, 6–201 (Repl.1990) (commencement of action in magistrate court), was personally before the district court, and the district court was hearing the case on appeal de novo from magistrate court. *See* SCRA 1986, 6–703 (Repl.1990). Therefore, the district court was armed with the two classic elements of jurisdiction to proceed with the case.

However, New Mexico courts have, at times, spoken expansively of a third kind of jurisdictional defect, where a court *exceeds* its jurisdiction "even though it had jurisdiction of the parties and generally of the subject matter." *See State ex rel. Miller v. Tackett,* 68 N.M. 318, 322, 361 P.2d 724, 727 (1961). The focus is upon so-called "jurisdiction" to decide the particular question, rather than jurisdiction over the subject matter as a whole. *See, e.g., Heckathorn v. Heckathorn,* 77 N.M. 369, 423 P.2d 410 (1967); *see also State v. Patten,* 41 N.M. 395, 69 P.2d 931 (1937). Generally, discussion about acts in excess of jurisdiction is either a prelude to issuing a writ of prohibition, *see State v. Zinn,* 80 N.M. 710, 712, 460 P.2d 240, 242 (1969), or a justification for considering an issue for the first time on appeal, *see State v. Orosco,* 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992); *State v. Sinyard,* 100 N.M. 694, 695, 675 P.2d 426, 427 (Ct.App.1983), *cert. denied,* 100 N.M. 689, 675 P.2d 421 (1984). The analytical foundation of such cases goes back many years, and bears contemporary review. *See In re Fullen,* 17 N.M. 394, 128 P. 64 (1912).

The notion of mere judicial error rising to the level of an act "in excess of jurisdiction" has been the subject of scholarly criticism. Zechariah Chafee, Jr., *Some Problems of Equity* 298–305 (1950); Dan B. Dobbs, *Trial Court Error as an Excess of Jurisdiction,* 43 Texas L.Rev. 854, 869–872 (1965); Doug Rendleman, *More on Void Orders,* 7 Ga. L.Rev. 246, 274 (1973). These and other commentators are of the view that much of the confusion between judicial error and acts "in excess of jurisdiction" arises from ancient limitations imposed upon the jurisdiction of

equity courts. These concepts are now largely of historical interest only, given the merger of law and equity into one form of action. *See* SCRA 1986, 1–002 (Repl.1992), *see also Patten,* 41 N.M. at 397, 69 P.2d at 933.

The modern view is generally to confine jurisdiction to its essentials, which are jurisdiction over the person and the subject matter. Rendleman, *supra,* at 274. The New Mexico Supreme Court has recently noted that, " 'jurisdictional error' should be confined to instances in which the court was not competent to act and that it is inappropriate to equate jurisdictional error with other .instances in which an error may be raised for the first time on appeal." *See Orosco,* 113 N.M. at 783, 833 P.2d at 1149. Our Supreme Court has also noted that, today, " '[j]urisdiction over the subject matter' is commonly treated as a unitary topic," placing in doubt the continued utility of a third category of jurisdiction, over the particular subject matter, where the court exceeds its grant of jurisdiction over the subject matter generally. *Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 687, 789 P.2d 1250, 1254 (1990). "[A]t this stage in the development of the law one may doubt that the distinction serves any useful purpose." *Id.*

■ Whatever the continuing validity may be of characterizing egregious judicial acts "in excess of jurisdiction," we decline to apply that notion to this case. Here, the district court had personal and subject matter jurisdiction, and therefore, the district court had the authority to proceed. The district court had the power to decide, even if in error. Therefore, the injunction is not subject to collateral attack. Defendant either had to appeal, seeking expedited judicial redress, or accept the order of the court.. He did not have the right simply to ignore the court's ruling; in effect, to become his own judge and jury. "The method of correcting error is by appeal, and not by disobedience." *Patten,* 41 N.M. at 402, 69 P.2d at 935. Accordingly, under the collateral bar rule, Defendant is precluded from challenging his contempt citation by a collateral attack on the injunction.

■ This affirmance should not, however, be misconstrued as granting undue judicial license in the area of contempt. Courts and commentators have questioned the outer limits of the collateral bar rule. For example, where fundamental constitutional liberties are subject to irremediable and irreparable harm, or where alternative avenues of judicial redress are simply not available given the press of time, the collateral bar rule may have to yield. *See Cherryhomes,* 114 N.M. at 498–99, 840 P.2d at 1265–66; *see also* Rendleman, *supra,* at 275–77. None of these concerns are at issue in this case, and therefore, they are not material to our affirmance. Nevertheless, courts should proceed with caution where fundamental rights and liberties are at stake.

■ Defendant, pursuant to *State v. Franklin,* 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer,* 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), raised vague issues regarding the State's lack of legal authority to require him to have a driver's license and vehicle registration. Because Defendant offers no citations in support of his position on these issues, we do not address them. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (issues unsupported by cited authority will not be considered on appeal).

## CONCLUSION

We reverse the injunction entered by the district court as part of Defendant's sentence for violation of the Motor Vehicle Code. The finding of contempt is affirmed because the district court had jurisdiction, and, pursuant to the collateral bar rule, Defendant ignored that injunction at his peril.

IT IS SO ORDERED.

ALARID and BLACK, JJ., concur.